# Haynesworth & Co. *v.* Adler.

### *Action of Assumpsit.*

1. *Contract; conditions precedent must be performed.*—Where a contract requires the performance by one of the parties of certain acts as a condition precedent to the enjoyment of his rights under the contract, such conditions precedent must be strictly and specifically and literally performed, and when there is more than one condition precedent, or such conditions are copulative, and the act to be performed consists of doing several particulars, all of the conditions or all of the several particulars must be performed before any rights under the contract can arise.

APPEAL from the Circuit Court of Jefferson.
Tried before the Hon. A. A. COLEMAN.
The facts of the case are sufficiently stated in the opinion.

THOS. R. ROULHAC, for appellant.—Interest on any indebtedness can be stipulated for by any collateral, or separate undertaking or agreement; and suit may be maintained and collection had of the interest on such separate agreement.—16 Ency. Law, p. 1000, 1002, 1054; *Mueller v. McGregor,* 28 Ohio St. 365; *Andrews v. Campbell,* 36 Ohio St. 361; *Kelly v. Phoenix Nat. Bank,* 17 N. Y. App. Div. 496; *Stone v. Bennett,* 8 Mo. 41; 11 Ency. Pl. & Pr. p. 438; *Crowder v. Red Mountain Co.,* 29 So. Rep. 847; *Ginn v. Mortgage Security Co.,* 92 Ala. 138; *Stickney v. Moore,* 108 Ala. 590.

The maturity and discharge of the principal debt does not destroy the right of action for the interest obligation.—8 Encyc. Law, (2d ed.) p. 16, v.; *Clark v. Iowa City,* 20 Wall. 583; *Walnut v. Wade,* 103 U. S. 695; *Bank v. Hartford R. R. Co.,* 8 R. I. 375; 91 Am. Dec. 237.

Where performance of the agreement is caused by the

defendant, he cannot derive any benefit from its non-performance.—*Wingo v. Hardy*, 94 Ala. 191; 2 Parsons on Contr. p. 679; Bish. on Contr. (Enl. ed.), § 1431; 1 Ad. on Contr. § 326; 5 Law on Rights, Rem. & Prac. § 2510, p. 4155; *Borst v. Simpson*, 90 Ala. 181; *Sprague v. Morgan*, 7 Ala. 952; *McLendon v. Godfrey*, 3 Ala. 181; *Eads v. Murphy*, 52 Ala. 520.

CABANISS & WEAKLEY, *contra.*—The condition compelling them to secure the ore lands at the prices named is a condition precedent, which must always be strictly, literally performed.—6 Am. & Eng. Enc. Law, (2d ed.), 504.

Even if it were true, as argued by counsel for plaintiffs, that the agreement to purchase the adjoining ore lands was void for indefiniteness, plaintiffs could claim nothing for that reason, because it is a condition precedent; and it is well settled law, that if for any reason a condition precedent is impossible of performance, no right or estate can vest.—6 Am. & Eng. Enc. Law, (2d ed.), 506.

HARALSON, J.—This suit is by R. F. Haynesworth and Kate Orman, as partners under the name of Haynesworth & Company, against the defendant, Morris Adler, and has reference to a claim of $7,000, by the plaintiffs against the defendant, for interest on certain notes of defendant to them, which notes, as claimed by plaintiffs, according to the transaction out of which they grew, should have borne six per cent interest, whereas, as claimed, by an oversight, they bore no interest from the date they were given until their respective maturities.

The case was tried upon the 3d and 4th counts of the complaint, demurrers to which were overruled, and on a special replication to pleas 5 and 6, upon which replication issue was joined.

The plaintiffs had a lease on 360 acres of mineral lands which ran for about twenty years. The fee in these lands belonged to other parties, and they were referred to in the proceedings as the Hill & Wilson lands. The

defendant was proposing to purchase this lease-hold interest of plaintiffs, and the interest of the Hill & Wilsons in the same, after the termination of said lease. The plaintiffs were offering to sell their lease-hold interest to defendant for the sum of $75,000, a part payable in cash and the balance at different times; and on the 14th of March, 1899, in consideration of $100.00 paid, they sold to defendant an option to buy their lease and lease contracts in said lands, to be expressed within sixteen days, which contract was reduced to writing and signed by the plaintiffs. According to this contract, the cash payment was $20,000, the same amount in sixty days, from the date of the agreement, $12,000 in twelve months, and the same amount in eighteen months, and $11,000 in twenty-four months. This agreement contained no provision for the payment of interest on these deferred payments.

There were other ore lands adjacent to the Hill & Wilson lands, containing some seven hundred and seventy acres, not so valuable for the ores on them, but which the defendant desired to secure an option on to buy, as they were regarded as valuable for purposes connected with the Hill & Wilson lands. These lands are referred to in the proceedings as the Hurst, Burgess & Little lands.

After the option contract referred to between plaintiffs and defendant had been entered into, on the 14th of March, 1899, the plaintiffs, as they allege, discovered that it did not contain any provisions for the payment of interest on the deferred payments, and some controversy arose between the parties as to that matter; the plaintiffs contending that these payments, by the terms of the understanding between them and the defendant, should bear 6 per cent interest from the date of the written agreement, and the defendant insisting that the instrument contained their oral agreement, and these deferred payments were not to bear interest. As a result of their respective contentions, the defendant gave to plaintiffs the written agreement sued on and set out in the 4th count of the complaint, which reads as fol-

lows: "Russellville, Ala., March 30th, 1889. Mess. R.
F. Haynesworth & Co., Russellville, Ala. Gentlemen:
If you secure for me the Hill & Wilson land, 360 acres,
at not exceeding $36,000, reasonable terms, and also ad-
joining ore lands on a similar basis, i. e., taking into con-
consideration the value for ore, you receiving
five per cent. commissions either from seller or
from me, on the purchase proposed to be made,
I will insert in the 12, 18 and 24 months notes;
six per cent. interest,"—signed by defendant. The
notes were on that date executed in two sets, one
set to R. F. Haynesworth, for $12,000, payable at 12
months, $12,000 at eighteen, and $11,000 at twenty-four
months, respectively, and the other set, with like dates,
amounts and dates of payments, respectively, were made
payable to Kate Orman. The prices at which the Hill
& Wilson, and other lands could be procured at an op-
tion for their sale and the times for the expression of
the options, in each case, was not known. They were to
be obtained, if obtainable at all, by the plaintiffs in their
own names, at the lowest price procurable and on as ex-
tended terms as practicable, for the expression and per-
formance of the options, subject, in each instance, to the
acceptance or rejection of defendant.

W. A. Orman, the husband and agent of one of the
plaintiffs, Mrs. Kate W. Orman, visited Baltimore the
home of the Hill & Wilson owners, with the view of pro-
curing from them an option to sell said 360 acres of land.
These parties declined to give an option at $36,000, but
did agree to do so at $36,750, and as a condition to agree-
ing to accept that price, they required the plaintiffs to
purchase also, 80 acres more of their lands,—40 acres at
$25.00 per acre, amounting to $1,000, and the other 40
acres at $50.00 per acre, amounting to $2,000, the two
forties aggregating in price $3,000, which when added to
the $36,000 for the 360 acres, made the sum of $39,750,
as the best he said, Orman could do, towards securing
the desired option on the 360 acres. These conditions
were reported to defendant, and were afterwards ac-
cepted and complied with by him.

As for the other lands, called the Hurst, Little & Bur-

gess lands, containing 770 acres, the plaintiffs failed to secure options on them, at prices they would recommend as fair, and, by an understanding between them and defendant, defendant was left to purchase them or not, as he chose to do. He afterwards bought these lands for himself paying therefor, $90,200.

It is not disputed that defendant has paid in full the $39,750, to the Hills and Wilsons for the 440 acres of land they agreed to sell plaintiffs, and that defendant has secured satisfactory titles thereto, nor is it disputed, but admitted, that plaintiffs have received full payment for the sale of their lease-hold interest in said 360 acres according to contract, except, as they contend, as before stated, that defendant owes them the interest at 6 per cent. on said deferred payments.

The case was tried by and before the presiding judge, without the intervention of a jury. He found for the defendant, and judgment was accordingly entered, to reverse which the appeal is prosecuted.

In the first place it cannot be denied, that plaintiffs failed to procure an option on the Hill & Wilson lands at the price of $36,000; the amount stipulated for their purchase in defendant's contract with plaintiffs. The amount at which the Hill and Wilsons gave the desired options for the purchase of these lands, including the 80 acres they required to be purchased, as a condition to selling the 360 acres desired, exceeded this amount by $3,750. This was not a complance in terms with the contract to pay interest and the writing must stand as embodying the real contract of the parties, unless it is shown that it was afterwards changed or modified by their agreement. The burden of making this appear is upon the plaintiffs.

The evidence most favorable to plaintiffs to support their contention is, as stated by Haynesworth, that "The notes as drawn and offered to us by Adler, did not contain any stipulation for the payment of interest. As soon as I saw this, I declined to receive the notes, telling Mr. Adler it had been understood and agreed that the notes should bear interest. After some conversation on

the subject in which I persisted that the notes should bear interest, and that it was so understood from the beginning," (which Adler denied), "Mr. Adler wrote off on a piece of paper the agreement on which this suit is brought, and asked Mr. Orman and myself how that would satisfy or suit us. Orman and myself discussed the matter awhile, and as it had already been arranged that Orman was to go on to Baltimore as soon as he could, for the purpose of buying out the fee of the Hill heirs, I finally consented to receive that agreement. and the notes, as they had been prepared, were accepted by us with that agreement." Orman in his testimony makes substantially the same statement. According to the evidence of both these witnesses, they accepted these notes, as prepared, without any specification for the payment of interest in them, on the condition written in the agreement sued on, for the payment of interest. These were conditions precedent which always must be strictly and literally performed.—6 Am. & Eng. Encyc. Law, (2d. ed.), 504, and authorities there cited.

It is said, when Ormon was departing for Baltimore, to procure an option, he told the defendant he was unwilling to go, if he was to be held down to the exact sum of $100.00 an acre for the 360 acres, and that the defendant told him to go on and do the best he could and not let a few dollars, either more or less, stand in the way. The plaintiffs at the time of this alleged conversation, had already accepted the contract. Adler, by the understanding, was to pay the expenses of the trip, and the plaintiffs had an interest to make the effort to procure the option, since, if procured and accepted, they were to receive 5 per cent. commissions on the amount at which it was obtained and accepted by defendant, and this, defendant guaranteed.

Thus far we have been considering the condition in the contract as to procuring the option for the 360 acres of land at $36,000. As before stated, the plaintiffs did not comply with the original contract as modified,—to pay interest,—in that defendant did not acquire an option on the 360 acres of Hill & Wilson land, but was required in purchasing the fee in them, to take and pay for

[Meyer v. Bloch.]

80 acres of other land. The contract contained also another and distinct condition, which was, not only to procure the option as to the Hill & Wilson lands, but, as the contract stipulated, "and also adjoining ore lands," on the basis specified. It was well understood that this provision referred to the Hurst, Little & Burgess lands, containing about 770 acres. An option on these lands was to be procured, as a condition precedent, to paying interest on the purchase money notes, as well as the option for the purchase of the Hill & Wilson lands. When conditions precedent to the performance of a contract are more than one, and are copulative, and the act to be performed consists of several particulars, the whole must be performed, "before the estate can arise."—6 Am. & Eng. Encyc. Law, (2d ed.), 505.

There is no pretense, that the option on these other lands was procured by plaintiffs. They endeavored to procure it, but failed, because of an offer at a price they were not willing to advise defendant to accept and voluntarily left them to be purchased by defendant, at such price as he chose to pay for them. He afterwards bought them for $90,000. The evidence wholly fails to establish any obligation on defendant to pay interest on account of anything the plaintiffs did in an effort to secure an option on these lands. So, the conditions for paying interest, on the conditions specified, seem to have failed.

We decline to consider other questions raised and discussed, since, under the view we take of the case, it is unnecessary to do so.

Affirmed.